Mark E. Burton, Jr., SBN 178400
AUDET & PARTNERS, LLP
711 Van Ness, Suite 500
San Francisco, CA 94102-3229
Tel: 415.568.2555
Fax: 415.568.2556
mburton@audetlaw.com

*Local Counsel for Plaintiffs*

(Trial Counsel Listed on Signature Page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQLYN KNIGHT, AQUANETTA WRIGHT, and LAPRINCESS JUNE, individually and on behalf of all similarly situated individuals,<br><br>            Plaintiffs,<br><br>v.<br><br>CONCENTRIX CORPORATION, a wholly-owned subsidiary of SYNNEX CORPORATION,<br><br>            Defendant. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs, JACQLYN KNIGHT ("Knight"), AQUANETTA WRIGHT ("Wright"), and LAPRINCESS JUNE ("June") (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby bring this Collective and Class Action Complaint against Defendant, CONCENTRIX CORPORATION, a wholly-owned subsidiary of SYNNEX CORPORATION ("Concentrix" or "Defendant") and state as follows:

## INTRODUCTION

1.     This is a class and collective action brought by Plaintiffs on behalf of themselves and all similarly situated current and/or former call center employees of Defendant, to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the New York Payment of Wages Act ("NYPOW"), N.Y. Lab. Law §§ 190, *et seq.*, the New York Minimum Wage Age ("NYMWA"), N.Y. Lab. Law §§ 650, *et seq.*, the New York Code of Rules and Regulations ("NY Code"), 12 N.Y.C.R.R. §§ 142, *et seq.* ("NYCRR") (the NYPOW, the NYMWA, the NY Code, collectively, "New York wage and hour laws"), alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiffs in Defendant's various call center locations, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary preliminary and postliminary activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit 1, at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."  *Id.*

3.     Plaintiffs, and those similarly situated, were subjected to Defendant's policy and practice of failing to compensate its call center employees for their necessary pre-shift and post-shift activities, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

4.      Plaintiffs seek a declaration that their rights, the rights of the putative FLSA Class, the rights of the putative Rule 23 Classes were violated, and seek to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

6.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8.      Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9.      Defendants' employees, including Plaintiffs, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10.     This Court has personal jurisdiction over Defendant because it is headquartered within the State of California, maintains it principal executive office within the State of California, conducts business within the State of California, and is registered with the California Secretary of State.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides within this District, conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in this Complaint occurred in this District.

## **PARTIES**

12.    Plaintiff Knight is an individual who resides in the County of Monroe, City of Rochester, New York. Knight was employed by Defendant as an hourly call center representative from October 2017 until approximately February 2018, in Defendant's Rochester, NY call center. Knight has executed her Consent to Sue form, which is attached hereto, as Exhibit 2.

13.    Plaintiff Wright is an individual who resides in the County of Wayne, City of Detroit, Michigan. Wright was employed by Defendant as an hourly call center representative from October 2017 until approximately April 2018 in Defendant's Southfield, MI call center. Wright has executed her Consent to Sue form, which is attached hereto, as Exhibit 3.

14.    Plaintiff June is an individual who resides in the County of Greenville, City of Greenville, South Carolina. June was employed by Defendant as an hourly call center representative August 2017 until approximately July 2018 in Defendant's Greenville, SC call center. June has executed her Consent to Sue form, which is attached hereto as Exhibit 4.

15.    Plaintiffs, and those similarly situated, are current and/or former hourly call center agents, or other job titles performing the same or similar job duties (hereinafter, "CCAs") who were or are employed by Defendant to perform work in Defendant's call centers throughout the United States.

16.    Defendant is "a global business services company, delivering extraordinary customer, employee and user experience for more than 450 of the world's best brands."[1]

---

[1] *Who is Concentrix?* Concentrix Corporation, https://www.concentrix.com/about-us/ (last visited September 12, 2018)

CLASS ACTION COMPLAINT

17.    Defendant's currently known United States locations are located in Fremont, CA; Irvine, CA; Tempe, AZ; Daleville, IN; Farmington Hills, MI; Southfield, MI; Milwaukee, WI; Hunt Valley, MD; Richmond, VA; Rochester, NY; and Greenville, SC.[2]

18.    Defendant "is the outsourced business service division of SYNNEX Corporation, headquartered in Fremont, CA"[3] with both its principal executive office and its Chief Executive Officer, Kevin M. Murai, located at Concentrix Corporation, 44201 Nobel Drive, Fremont, California, 94538.

19.    Defendant is registered with the California Secretary of State to do business in California and can be served at its Agent for Service of Process, CT Corporation System (C0168406) at 818 West Seventh Street, Suite 930, Los Angeles, California, 90017.

## GENERAL ALLEGATIONS

20.    Knight was employed by Defendant as an hourly call center employee from October 2017 until approximately February 2018 in Defendant's Rochester, NY call center. Defendant assigned Knight to answer customer calls for Defendant's client, LG.

21.    Knight's primary job duties were to answer calls from vendors and consumers who purchased LG products and provide customer service, such as tracking products, doing inventory searches, and informing them about replacements.

22.    Knight's hourly rate was approximately $11.27 per hour.

23.    Wright was employed by Defendant as an hourly call center employee from October 2017 until approximately April 2018 in Defendant's Southfield, MI call center. Defendant assigned Knight to answer customer calls for Defendant's client, Apple.

24.    Wright's primary job duties were to answer calls from consumers who purchased Apple products and providing customer service, informing them about Apple products, and assisting with technical issues.

25.    Wright's hourly rate was approximately $13.00 per hour.

---

[2] *Local Intimacy*, Concentrix Corporation, https://www.concentrix.com/#locations (last visited September 12, 2018)

[3] *Concentrix Heritage*, Concentrix Corporation, https://www.concentrix.com/about-us/ (last visited September 12, 2018)

26.    June was employed by Defendant as an hourly call center employee from August 2017 until approximately July 2018 in Defendant's Greenville, SC call center. Defendant assigned Knight to answer customer calls for Defendant's client, Apple.

27.    June's primary job duties were to answer calls from consumers looking to place orders, assisting with providing information about products, and technical issues.

28.    June's hourly rate was approximately $10.25 per hour.

29.    Throughout Plaintiffs' employments with Defendant, they each regularly worked at least 40 hours per workweek.

30.    June occasionally worked less than 40 hours per workweek but did not typically work less than 30 hours per workweek.

31.    Knight and Wright regularly worked in excess of 40 hours per workweek.

32.    Knight typically worked approximately 48 hours per workweek.

33.    Wright typically worked 45 to 50 hour per workweek.

34.    Regardless of whether Plaintiffs were scheduled to work a workweek totaling under 40 hours, scheduled to work a workweek totaling 40 hours, or scheduled to work a workweek totaling in excess of 40 hours, Plaintiffs were regularly required to work a substantial amount of time off-the-clock as part of their job duties as call center employees. Plaintiffs were never compensated for this time worked off-the-clock.

35.    29 C.F.R. § 553.221 provides that:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

36.    29 C.F.R. § 790.8 provides that "[a]mong activities included as an integral

part of a principal activity are those closely related activities which are indispensable to its performance."

### Pre-Shift Off-the-Clock Work

37.   Plaintiffs were tasked with providing Defendant's clients with customer service by use of Defendant's telephones, Defendant's computers, and the programs accessible from Defendant's computers.

38.   Defendant required Plaintiffs, and all other current and/or former hourly CCAs, to arrive at the call center before their scheduled shifts to boot up their computers, launch and log into necessary programs, servers, and applications, review the bulletin and announcements from Defendant and/or their clients, and log into Defendant's phone systems to ensure they were ready to take their first call at their scheduled shift start. This pre-shift procedure regularly takes 15 minutes per shift, or even as much as 30 minutes or more if technical issues arise. Only after this process was completed were Plaintiffs allowed to clock-in to Defendant's timekeeping system at the scheduled start of their shifts.

39.   Regardless of which call center location Plaintiffs worked for, or regardless of which of Defendant's clients Plaintiffs were assigned to, in order for Plaintiffs to perform their jobs as call center employees the pre-shift boot up procedure was integral and indispensable to the performance of their principal job duties and integral and indispensable to Defendant's business as "a global business services company, delivering extraordinary customer, employee and user experience for more than 450 of the world's best brands."[4]

40.   The unpaid pre-shift off-the-clock work performed by Plaintiffs, and all other current and/or former hourly CCAs, directly benefits Defendant.

### Post-Shift Off-the-Clock Work

41.   Plaintiffs, and all other current and/or former hourly CCAs, were apportioned calls until the scheduled end of their shifts because they were not allowed to log out of

---

[4] *Who is Concentrix?* Concentrix Corporation, https://www.concentrix.com/about-us/ (last visited September 12, 2018)

6

CLASS ACTION COMPLAINT

Defendant's phone system until the scheduled end of their shifts.

42. Plaintiffs would regularly receive their final customer calls at, or very near, the scheduled end time of their shifts, but would have to remain on the call to completion, regardless of how long the call lasted. If the final call kept Plaintiffs on the clock past their scheduled end time of their shifts, Defendant would regularly not recognize this post-shift time as compensable and remove the time.

43. Working through and completing their final calls each shift was integral and indispensable to Plaintiffs primary job duties and accordingly, was integral and indispensable to Defendant's business.

44. Further, Defendant required Plaintiffs, and all other current and/or former hourly CCAs, to first clock out of the timekeeping system on their phones, then spend their time logging out of their necessary programs, servers, and applications and shutting down their computer off-the-clock. This boot down process regularly takes 5 minutes per shift.

45. The post-shift off-the-clock boot down work performed by Plaintiffs, and all other current and/or former hourly CCAs, was integral and indispensable to the primary job duties of Defendant's CCAs and directly benefited Defendant.

### Defendant's Policy and Practice of Off-the-Clock Work Violated Federal and State Laws

46. At all times relevant, Defendant suffered or permitted Plaintiffs, and all other current and/or former hourly CCAs, to routinely perform off-the-clock pre-shift work by not allowing its employees to clock-in until *after* the pre-shift procedure was complete. Defendant would not allow Plaintiffs, and all other current and/or former hourly CCAs, to clock into the time keeping system through Defendant's phone system until their scheduled shift start time.

47. At all times relevant, Defendant suffered or permitted Plaintiffs, and all other current and/or former hourly CCAs, to routinely perform off-the-clock work by not considering final call time compensable and not accounting for post-shift boot down time.

48. Defendant knew or should have known that its employees are required to be

paid for all compensable time throughout the workweek. *See* 29 C.F.R. § 553.221; *id.* at § 790.8; *id.* at § 785.19(a).

49.    Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former hourly CCAs, for their off-the-clock pre-shift or post-shift compensable work performed in any amount.

50.    Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, required it to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable off-the-clock pre-shift or post-shift work performed.

51.    Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former hourly CCAs, for their off-the-clock pre-shift or post-shift compensable work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

52.    Defendant knew or should have known that New York wage and hour laws require an employer to pay employees wages "for *each hour* worked." *See* N.Y. Lab. Law § 652 (emphasis added); 12 N.Y.C.R.R. § 142-2.1; *id.* at § 142-2.9.

53.    Despite this, Defendant failed to compensate Knight, and all other current and/or former hourly CCAs working in Defendant's New York call center location, for their off-the-clock pre-shift or post-shift compensable work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper legal rates, including overtime premiums, in violation of the New York wage and hour laws.

54.    In reckless disregard of the FLSA and New York wage and hour laws, Defendant adopted and then adhered to its policy, plan or practice of employing Plaintiffs, and all other current and/or former hourly CCAs, to perform pre-shift or post-shift compensable work off-the-clock. This illegal policy, plan or practice resulted in Plaintiffs, and all other current and/or former hourly CCAs, not being paid correctly for all straight time and overtime worked in violation of the and the New York wage and hour laws and the FLSA.

CLASS ACTION COMPLAINT

*Recordkeeping*

62.     The New York wage and hour laws require "[e]very employer" to "establish, maintain and preserve for not less than six years . . . the number of hours worked daily and weekly."   12 N.Y.C.R.R. § 142-2.6.

63.     Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

64.     The employer is mandated to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

55.     Upon information and belief, Defendant failed to establish, maintain and preserve accurate timesheet and payroll records as required by the FLSA and the New York wage and hour laws.

65.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

66.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper

compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## **COLLECTIVE AND CLASS ACTION ALLEGATIONS**

56.    Plaintiffs brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) on their own behalves and on behalf of:

> *All current and former Call Center Agent employees who worked for Concentrix Corporation at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition as necessary.

57.    Plaintiffs do not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

58.    *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard*: With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiffs.   The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan (namely, Defendant's practices, policy, or plan of not paying their call center for their pre-shift or post-shift compensable work performed in excess of 40 hours per workweek at a overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

59.    Upon information and belief, Plaintiffs estimate that the FLSA Collective, including both current and former call center employees over the relevant period, will include several thousand members who would benefit from the issuance of a court-

supervised notice of this action and the opportunity to join it. The precise number of collective Class members should be readily available from a review of Defendant's personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

67.     Plaintiffs share the same interests as the FLSA Collective in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, to the factual assessment and legal standards lend themselves to a collective action.

**THE NEW YORK WAGE AND HOUR LAW CLASS ACTION ALLEGATIONS**

60.     Plaintiff Knight brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Call Center Agent employees who worked for Concentrix Corporation at its Rochester, New York call center, at any time in the last six years.*

(hereinafter referred to as the "New York Class"). Plaintiffs reserve the right to amend this definition as necessary.

61.     *Numerosity*:   The members of the New York Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

62.     *Commonality/Predominance*:     There is a well-defined community of interest among New York Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.  Whether the pre-shift off-the-clock time the New York Class members spend on boot up and log-in activities each shift is compensable under the NYMWA and the NY Code;

b.  Whether Defendant violated the NYPOW, NYMWA, and the NY Code through their pay practices;

c.  Whether Defendant's violations of the NYPOW, NYMWA, and the NY Code were willful;

d.  Whether Defendant violated the NY Code by failing to make, keep, and preserve true and accurate payroll records;

e.  Whether Defendant should be required to pay unpaid wages, overtime premiums, compensatory damages, liquidated damages, attorneys' fees and costs, and pre-and post-judgment interest for violating the NYPOW, NYMWA, and the NY Code.

63.  *Typicality*:  Knight's claims are typical of those of the New York Class in that Wright and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices.  Knight's claims arise from Defendant's same policies, practices, and course of conduct as all other New York Class members' claims and Knight's legal theories are based on the same legal theories as all other New Work Class members: whether all New York Class members were employed by Defendant on an hourly basis without receiving compensation for "off-the-clock" wages owed for that work.

64.  *Adequacy*:  Knight will fully and adequately protect the interests of the New York Class and Knight retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Knight nor her counsel has interests that are contrary to, or conflicting with, the interests of the New York Class.

65.  *Superiority*:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically

infeasible New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the New York Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative class' claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

66. The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the New York Class within that group a separate opt-out notice pertaining to their rights under the New York state law. Knight and her counsel know of no unusual difficulties in the case and Defendant have payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[5]

67. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

*All current and former Call Center Agent employees who*

---

[5] To the extent the Court finds, or Defendant argues, the employment relationship between itself and its CCAs did not form a contract, Plaintiffs reserve the right to seek Rule 23 class certification under Plaintiff's and the Class' quasi-contract claims (Count IV).

> *worked for Concentrix Corporation at any time in the last three years.*

(hereinafter referred to as the "Nationwide Class"). Plaintiffs reserve the right to amend this definition as necessary.

68.   *Numerosity*:   The members of the Nationwide Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

69.   *Commonality/Predominance*:   There is a well-defined community of interest among Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.   Whether Defendant offered to pay Plaintiffs and the Nationwide Class certain rates (depending on the technical job titles) per hour for each hour worked as call center employees;

b.   Whether Plaintiffs and the Nationwide Class accepted Defendant's offer by performing the essential functions of the job;

c.   Whether Defendant breached the contract by failing to pay Plaintiffs and the Nationwide Class for each and every hour worked, whether pre- or post-shift; and

d.   Whether Plaintiffs and the Nationwide Class were damaged.

70.   *Typicality*:   Plaintiffs claims are typical of those of the Nationwide Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from Defendant's same policies, practices, and course of conduct as all other Nationwide Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Nationwide Class members: whether the Defendant and the Nationwide

1    Class members were employed under an implied contract to be paid for each and every

2    hour worked by Defendant.

3        71.    *Adequacy*:  Plaintiffs will fully and adequately protect the interests of the

4    Nationwide Class and Plaintiffs retained national counsel who are qualified and

5    experienced in the prosecution of nationwide wage-and-hour class actions. Neither

6    Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the

7    interests of the Nationwide Class.

8        72.    *Superiority*:  A class action is superior to other available methods for the

9    fair and efficient adjudication of the controversy, because, inter alia, it is economically

10   infeasible Nationwide Class members to prosecute individual actions of their own given

11   the relatively small amount of damages at stake for each individual along with the fear

12   of reprisal by their employer. Given the material similarity of the Nationwide Class

13   members' claims, even if each Class member could afford to litigate a separate claim, this

14   Court should not countenance or require the filing of thousands of identical actions.

15   Individual litigation of the legal and factual issues raised by Defendant's conduct would

16   cause unavoidable delay, a significant duplication of efforts, and an extreme waste of

17   resources. Alternatively, proceeding by way of a class action would permit the efficient

18   supervision of the putative class' claims, create significant economies of scale for the

19   Court and the parties and result in a binding, uniform adjudication on all issues.

20       73.    The case will be manageable as a class action. This class action can be

21   efficiently and effectively managed by sending the same FLSA opt-in notice to all

22   employees similarly situated and adding for the Nationwide Class within that group a

23   separate opt-out notice pertaining to their rights under the common law. Plaintiffs and

24   their counsel know of no unusual difficulties in the case and Defendant have payroll

25   systems that will allow the class, wage, and damages issues in the case to be resolved

26   with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are

27   satisfied in the case, class certification is appropriate.  *Shady Grove Orthopedic Assoc.,*

28   *P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a

categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. FAILURE TO PAY OVERTIME WAGES

74.  Plaintiffs re-allege and incorporate all previous paragraphs herein.

75.  At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

76.  Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

77.  At all times relevant to this action, Plaintiffs were each an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

78.  Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

79.  The position of call center agent is not exempt from the FLSA.

80.  Defendant's other job titles performing similar call center agent job duties are not exempt from the FLSA.

81.  At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

82.  The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. *See* 29 U.S.C. § 207.

83.  Defendant violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

84.  Upon information and belief, Defendant has corporate policies of evading

16

CLASS ACTION COMPLAINT

overtime pay for its hourly workers.

85.     Defendant's violations of the FLSA were knowing and willful.

86.     By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated call former hourly call center agents, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to former hourly call center agents, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiffs.

87.     None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

88.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF NEW YORK WAGE AND HOUR LAWS FAILURE TO PAY MINIMUM WAGES AND OVERTIME PREMIUMS

89.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

90.     At all times relevant to this action, Defendant was an "employer" under the NYPOW, subject to the wage payment provisions of the NYPOW. *See* N.Y. Lab. Law § 190.1.

91.     At all times relevant to this action, Defendant was an "employer" covered by the minimum wage and overtime mandates of the NYMWA and the NY Code, and Knight and the New York Class are each an "employee" entitled to the NYMWA's and the NY Code's protections. *See* N.Y. Lab. Law §§ 651.5-651.6 and 652; *see also* 12 N.Y.C.R.R. §§

142-2.1, 142-2.9, and 142-2.14(a).

92.    At all times relevant to this action, Knight and the New York Class are each an "employee" and Defendant was an "employer" under the NYPOW and subject to the wage payment provisions of the NYPOW. *See* N.Y. Lab. Law § 190.1-190.2.

93.    At all relevant times, Defendant suffered, permitted, and/or required Knight and all New York Class members to work necessary pre-shift boot up activities and post shift call completion and boot down activities without being paid a minimum wage or overtime pay as required by New York wage and hour laws.

94.    The New York wage and hour laws entitles employees to certain hourly minimum wages and overtime wages of not less than one and one-half times the regular rate of pay of the employee for all hours worked and mandators that employers must pay all wages due not less frequently than semi-monthly. *See* N.Y. Lab. Law § 652; 12 N.Y.C.R.R. §§ 142-2.1, 142-2.9; N.Y. Lab. Law § 191.1.

95.    Defendant violated New York wage and hour laws by regularly and repeatedly failing to compensate Knight and the New York Class for the times spent on necessary pre-shift boot up activities and post shift call completion and boot down activities as alleged throughout this Complaint.

96.    As a result of the unlawful acts of Defendant, Knight and all New York Class members were deprived of their rightfully earned minimum wages and overtime pay in amounts to be determined at trial.

97.    The NYMWA entitles employees to bring a private action against an employer within six years to recover "the amount of any such underpayments, together with costs *[sic]* all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due." *See* N.Y. Lab. Law §§ 663.1 and 663.3.

98.    The New York wage and hour laws require "[e]very employer" to "establish,

maintain and preserve for not less than six years . . . the number of hours worked daily and weekly."   12 N.Y.C.R.R. § 142-2.6.

99.   Defendant failed to establish, maintain and preserve true and accurate records of all hours worked by Knight and the New York Class by failing to account for necessary pre-shift boot up activities and post shift call completion and boot down activities.

100.   None of the provisions of the New York wage and hour laws can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

101.   As a result of the foregoing conduct, Knight seeks on behalf of herself and all members of the New York Class unpaid wages at the required legal rate, including but not limited to the legal overtime premium, for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

## COUNT III

### (National Breach of Contract Class Action)
### BREACH OF CONTRACT

102.   Plaintiffs and the Nationwide Class re-allege and incorporate all previous paragraphs herein and further alleges as follows.

103.   Plaintiffs were hired at various times. Defendant offered to pay Plaintiffs and the Nationwide Class certain rates per hour for each hour worked as a call center employee. Each Nationwide Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of their regular business activities.

104.   Plaintiffs and the Nationwide Class accepted the offer and worked for Defendant as Call Center Agents.

105.   Plaintiffs and the Nationwide Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

CLASS ACTION COMPLAINT

106.   Plaintiffs' work, and the work of the Nationwide Class, required pre-shift boot up time and post shift call completion and boot down time.

107.   Plaintiffs and every other Nationwide Class member performed under their contract by doing their jobs in addition to carrying out the pre-shift and post-shift off-the-clock activities that Defendant required.

108.   Upon information and belief, Defendant does not allow its employees to clock in to begin being compensated until after the pre-shift boot up procedures are complete.

109.   Upon information and belief, Defendant does not compensate their employees for time still clocked in and performing work if the work performed is past the technical end of their shifts.

110.   Upon information and belief, Defendant does not compensate its employees for performing required boot down procedures past the technical end of their shifts.

111.   Despite being required to complete these pre-shift and post-shift integral job duties, Plaintiffs and the Nationwide Class were not compensated at their hourly rate for their work performed.

112.   By failing to pay Plaintiffs and the Nationwide Class for the pre-shift boot up time, and post shift call completion and boot down time, Defendant breached its contract with Plaintiffs and the Class to pay their hourly rate for each hour worked.

113.   Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Nationwide Class members spent doing pre-shift and post-shift activities, which is a fundamental part of an employer's job.

114.   In sum, the facts set forth above establish the following elements and terms of the contract:

a.   Offer: a set hourly rate for each hour worked as a call center employee;

b.   Acceptance: Plaintiffs and the Nationwide Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

c.   Breach: Defendant did not pay Plaintiffs and the Nationwide Class for

20

CLASS ACTION COMPLAINT

each hour (or part thereof) worked; and,

d.    Damages: By failing to pay Plaintiffs and the Nationwide Class their hourly rate for each hour worked, Plaintiffs and the Class were damaged in an amount to be proven at trial.

115.    These claims are appropriate for nationwide class certification under Rules (b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

116.    As a direct and proximate cause of Defendant's breach, Plaintiffs and the Nationwide Class were damaged at an amount to be proven at trial.

## COUNT IV

## QUASI-CONTRACTUAL REMEDIES
## UNJUST ENRICHMENT

117.    Plaintiffs and the Nationwide Class re-allege and incorporate paragraphs 1-71; 79-106 and further alleges as follows.

118.    Upon information and belief, Plaintiffs' and every other Nationwide Class members' pre-shift boot up time and post shift call completion and boot down time provided valuable work and income for Defendant; namely, compensation to Defendant for completing telephone sales and customer service activity that directly benefited Defendant.

119.    *Pre-Shift Boot up Time*: Plaintiffs and the Nationwide Class were unable to perform any job function without booting up and logging in to their computer and required programs. In short, in order to start their work of fielding customer calls precisely at their designated start time, Plaintiffs and the Nationwide Class worked off-the-clock before their shift began. Without the pre-shift boot-up time, Plaintiffs and the Nationwide Class were unable to take customer calls at their designated start time. Further, upon information and belief, Defendant does not allow their employees to clock in to begin being compensated until after the pre-shift procedures are complete.

120. *Post-Shift Call Completion and Boot Down Time*: Plaintiffs and the Nationwide Class were required to remain clocked in until they had completed their last phone call of their shifts. However, upon information and belief, Defendant did not compensate their employees for time still clocked in and performing work if the work performed is past the technical end of their shifts. Additionally, Defendant required Plaintiffs and the Nationwide Class to clock out first and then perform the required boot down procedures.

121. As part of their ongoing employment relationships with Defendant, Plaintiffs and other Nationwide Class members expected to be paid wages for the time they spent doing their jobs, including performance of necessary pre-shift boot up activities and post shift call completion and boot down activities, performed each shift.

122. By not paying Plaintiffs and other Nationwide Class members for the time they spent performing necessary pre-shift boot up activities and post shift call completion and boot down activities, Defendant has been unjustly enriched at the expense of Plaintiffs and the Nationwide Class in an amount to be determined at trial.

123. By not paying Plaintiffs and other Nationwide Class members for the time they spent performing necessary activities, Defendant has also saved itself hundreds-of-thousands of dollars in unpaid payroll taxes – taxes that would have otherwise been credited to Plaintiffs' and Nationwide Class members' benefit.

124. It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiffs and the Nationwide Class without compensation.

125. These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

126. As a direct and proximate cause of Defendant's unjust enrichment, Plaintiffs and the Nationwide Class were harmed at an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

CLASS ACTION COMPLAINT

A.   An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

B.   An Order certifying this action as a class action (for the Rule 23 New York Class) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C.   An Order certifying this action as a class action (for the Rule 23 Breach of Contract Nationwide Class or for the Rule 23 Unjust Enrichment Nationwide Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

E.   An Order designating the Named-Plaintiffs to act as the Nationwide Class Representatives on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Nationwide Classes;

F.   An Order designating Knight to act as the Class Representative on behalf of all similarly situated individuals for the Rule 23 New York Class;

G.   An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

H.   An Order declaring that Defendant violated its obligations under the FLSA;

I.      An Order declaring that Defendant willfully violated the NYPOW, the NYMWA, the NY Code and their attendant regulations as set forth above;

J.      An Order declaring that Defendant violated its obligations under the NYPOW, the NYMWA, and the NY Code;

K.      An Order granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid minimum wages and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked in excess of 40 hours per week for the past three years for the FLSA Class and for the past six years for the New York Class;

L.      An Order awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid overtime found owing to Plaintiffs under the FLSA;

M.      An Order granting judgment in favor of Plaintiffs and against Defendants and awarding the amount of unpaid regular wages owed calculated at Plaintiffs' regular rate multiplied by all hours that Plaintiffs worked off-the-clock up to 40 hours per week for the past six years for the New York Class;

N.      An Order awarding liquidated damages to Plaintiffs, in an amount equal to the amount of unpaid straight time found owing to Plaintiffs under the NYPOW, the NYMWA, the NY Code;

O.      An Order awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action;

P.      An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

Q.      An Order awarding such further relief as this court deems appropriate.

CLASS ACTION COMPLAINT

### JURY DEMAND

NOW COME Plaintiffs, by and through their Attorneys, and hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

November 19, 2018                    By: /s Mark E. Burton, Jr

Mark E. Burton, Jr., SBN 178400
AUDET & PARTNERS, LLP
711 Van Ness, Suite 500
San Francisco, CA 94102-3229
Tel: 415.568.2555
Fax: 415.568.2556
mburton@audetlaw.com

*Local Counsel for Plaintiffs*

Molly E. Nephew (MN Bar No. 397607)*
mnephew@johnsonbecker.com
Jacob R. Rusch (MN Bar No. 391892)*
jrusch@johnsonbecker.com
JOHNSONBECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801

*Trial Counsel for Plaintiffs*

CLASS ACTION COMPLAINT