United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACQLYN KNIGHT, et al.,

Plaintiffs,

v.

CONCENTRIX CORPORATION,

Defendant.

Case No. 4:18-cv-07101-KAW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION**

Re: Dkt. No. 46

On May 20, 2019, Plaintiffs filed a motion for conditional certification pursuant to the Fair Labor Standards Act.

On August 1, 2019, the Court held a hearing, and, after careful consideration of the parties' arguments and the applicable legal authority, for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART the motion for conditional certification.

## I. BACKGROUND

On November 21, 2018, Plaintiffs Jacqlyn Knight, Aquanetta Wright, and LaPrincess June filed the instant collective action complaint against Defendant Concentrix Services US, Inc. (Compl., Dkt. No. 1.) On November 28, 2018, Plaintiff Christopher Mcadory joined the action. (Dkt. No. 9.) Defendant operates physical call center locations throughout the United States, including in New York, Michigan, South Carolina, California, Arizona, Indiana, Wisconsin, Maryland, and Virginia. (Pl.'s Mot., Dkt. No. 46 at 4; Decl. of Sarah Ording, "Ording Decl.," Dkt. No. 53-1 at 6, ¶ 3.) The Plaintiffs worked at Defendant's call centers located in Rochester, New York, Southfield, Michigan, and Warren, Michigan. *Id.* at 4-5. Alternatively, Defendant's call center employees may also operate from client facilities, utilizing the respective client's systems, software, and tools. (Def.'s Opp'n, Dkt. No. 53 at 2; Ording Decl. ¶ 4.) Defendant claims that each

"project" or location has multiple Team Leaders, who supervise different hourly Customer Service Representatives ("CSRs"). (Def.'s Opp'n at 3.)

Plaintiffs worked as CSRs or Technical Support Representatives, but allege to have performed the same or similar job duties as all Call Center Agent employees ("CCAs"). (Pls.' Mot. at 4-5.) Collectively, Plaintiffs claim that they worked in excess of 40 hours a week, were paid between $11 to $13 an hour, and worked for Concentrix between June 2017 and June 2018. (*See id.*; *see also* Decl. of Jacqlyn Knight, "Knight Decl.," Dkt. No. 46-2 ¶ 3 (employed from October 2017 to February 2018); *see also* Decl. of Aquanetta Wright, "Wright Decl.," Dkt. No. 46-3 ¶ 3 (employed from October 2017 to April 2018); *see also* Decl. of Christopher Mcadory, "Mcadory Decl.," Dkt. No. 46-4 ¶ 3 (employed at two different call centers from June 2017 to June 2018).). Plaintiffs contend that they were not paid for certain pre-shift activities including turning on their computer, logging into their computer, logging into several necessary programs, and plugging in their headsets. (Pls.' Mot. at 5.)

On May 21, 2019, Plaintiffs filed their motion. (Pls.' Mot, Dkt. No. 46.) On June 28, 2019, Defendant filed its opposition. (Def.'s Opp'n, Dkt. No. 53.) On July 12, 2019, Plaintiffs filed their reply. (Pls.' Reply, Dkt. No. 54.)

## II. LEGAL STANDARD

Under the Fair Labor Standards Act ("FLSA"), an employee may bring a collective action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). "[W]orkers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). "Similarly situated" means "plaintiffs must be alike with regard to some *material* aspect of their litigation." *Id.* at 1114. "[W]hat matters is not just any similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." *Id.* at 1115. In other words, "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. Unlike class actions under Federal Rule of Civil

Procedure 23, employees who do not affirmatively opt in are not bound by the judgment and may bring their own action. *Centurioni v. City & Cty. of S.F.*, 2008 WL 295096, at *1 (N.D. Cal. Feb. 1, 2008).

Determining whether a collective action is appropriate is within the discretion of the district court. *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1028 (N.D. Cal. 2017) (citing *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004)). While the FLSA does not explicitly define "similarly situated," a majority of courts in this circuit follow a two-step approach to determine whether employees in a proposed collective are "similarly situated." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466–67 (N.D. Cal. Aug. 16, 2004); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 837 (N.D. Cal. 2010); *see also Daniels v. Aeropostale West, Inc.*, 2013 WL 1758891, *5 (N.D. Cal. Apr. 24, 2013).

In the first step, frequently referred to as the notice stage, plaintiff moves for preliminary certification and show that the members of the defined collective are "similarly situated" for purposes of providing notice of the action. At this early stage, the standard is "lenient" and district courts simply evaluate whether there is "some factual basis beyond the mere averments in their complaint for the class allegations." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. Apr. 11, 2007); *see also Campbell*, 903 F.3d at 1109; *see also Harris*, 716 F. Supp. 2d at 838 (handful of declarations sufficient to make factual showing at notice stage).

Also, in contrast to class actions under Rule 23, the court does not play a gatekeeping role in collective actions. *Campbell*, 903 F.3d at 1101. Rather, the sole consequence of preliminary or conditional certification is sending out a court-approved written notice to putative members for the purpose of opting-in to the litigation. *Id.* Thus, at the notice stage, courts have also rejected attempts by defendants to introduce evidence going to the merits of plaintiffs' allegations. *See, e.g.*, *Labrie v. UPS Supply Chain Solutions, Inc.*, No. C-08-3182-PJH, 2009 WL 723599 (N.D. Cal. Mar. 18, 2009) (rejecting defendant's evidence in evaluating conditional certification, and finding that it is more appropriately considered on a motion to decertify).

The second step occurs when discovery has closed, and the case is ready to be tried. *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2019 WL 2775567, at *2 (N.D. Cal. July

2, 2019). At that juncture, the party opposing collective certification may move for decertification. *Leuthold*, 224 F.R.D. 466–67.

## III. DISCUSSION

At the notice stage, the plaintiff bears the burden of showing that they and the putative collective action members were subject to an illegal policy, plan, or decision, and are "similarly situated." *Saleh,* 297 F. Supp. 3d at 1028; *Daniels*, 2013 WL 1758891, *6. Here, Plaintiffs seek to conditionally certify the collective and authorize notice to

> All current and former Call Center Agent employees, or other job titles performing the same or similar job duties, who worked more than forty hours per week for Concentrix at any time in the last three years and were not paid overtime for every hour worked. "At Home" Call Center Agents are excluded from the Class.

(Pl.'s Mot. at 1.)

### A. Whether Plaintiffs have satisfied their burden for conditional certification.

Plaintiffs' FLSA claim is based on Concentrix's alleged failure to pay Plaintiffs and other CCAs overtime compensation for off-the-clock hours that they were forced to work prior to their shifts, in order to be ready to take calls as soon as their shifts started.

#### i. Illegal policy, plan or decision requirement is satisfied

Plaintiffs allege that they and the putative members were subject to the same illegal conduct, namely the requirement that they arrive at their workstations and perform pre-shift work before they clocked in to their scheduled shift. (Pls.' Mot. at 6-7 (citing Compl. ¶¶ 34, 37-40.) Indeed, Ms. Knight states that she worked at least 15 minutes off-the-clock before her shift. (Knight Decl. ¶ 5.) The pre-shift work was necessary, because Ms. Knight was required to log in to all of her applications and be ready to take her first call at her shift start time. *Id.* Similarly, Ms. Wright reported working up to 30 minutes off-the-clock before her shifts. (Wright Decl. ¶ 5.) Mr. Mcadory also claims that he regularly spent 15 to 30 minutes working off-the-clock prior to the start of his shift so that his phone was "ready" to take calls. (Mcadory Decl. ¶ 5.)

In opposition, Defendant contends that the company's policy is that CSRs "accurately record all time worked and are paid for all time worked." (Def.'s Opp'n at 8.) And, to the extent that Plaintiffs' allegations are true, that this pre-shift work is the result of "a few rogue Team

Leaders instruct[ing] three of the four Plaintiffs not to record all of their time worked— not a company-wide policy." *Id.* at 9. These three plaintiffs, however, worked in three locations in two different states, which suggests that there may be some deviation from the official company policy of paying employees for all hours worked. (*See* Pl.'s Mot. at 7.)

Defendant has submitted 17 declarations to support the claim that all CSRs were effectively trained to record all of their time worked, including pre- and post-shift time. (Def.'s Opp'n at 9.) Generally, the fact that Defendant has submitted competing declarations does not preclude conditional certification. Harris, 716 F. Supp. 2d at 838. That Concentrix submitted declarations from putative class members that conflict factually with the declarations from the named plaintiffs is irrelevant at this juncture, because the Court does not resolve factual disputes at the notice stage. *Saleh*, 297 F. Supp. 3d at 1034 (quoting *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010)).

Furthermore, Defendant's assertion that "Plaintiffs must come forward with concrete evidence, based on personal knowledge, that CSRs, *en masse*, were instructed on the same illegal policy," is not the law in this district, and the undersigned is not bound by the decisions of neighboring districts. (*See* Def.'s Opp'n at 12) (emphasis in original). To require otherwise would permit a defendant employer to defeat certification before the plaintiffs were afforded an opportunity to engage in meaningful discovery to obtain the "concrete evidence" necessary to support their claims.

Instead, the only question at the conditional certification stage is whether Plaintiffs have made "substantial allegations" that the proposed collective members were subject to an illegal policy, plan, or decision, by showing there is some factual basis beyond the "mere averments" in the complaint. *Godhigh v. Savers, LLC*, 2016 WL 7406659, at *3 (N.D. Cal. Dec. 22, 2016) (citing *Daniels*, 2013 WL 1758891, at *6.). Plaintiffs three declarations are sufficient to meet their burden at the notice stage. *See Harris*, 716 F. Supp. 2d at 838.

**ii. Plaintiffs are similarly situated for the purposes of conditional certification.**

Plaintiffs must also show that they are similarly situated with the members of the defined collective. Plaintiffs allege that, regardless of which call center location they worked at, which of

United States District Court
Northern District of California

Defendant's clients they serviced, or what their technical job titles were, Plaintiffs all performed similar jobs. (Pls.' Mot. at 12.) Specifically, they performed customer service for Defendant's clients via Defendant's phone and computer systems. *Id.*; *see Compl*. ¶¶ 20-21. Defendant does not dispute that the named plaintiffs performed the same job functions.

Instead, Defendant argues that Plaintiffs are not similarly situated with respect to their timekeeping process, which varied by location. (Def.'s Opp'n at 9-10.) For example, some putative class members used telephones to login, while others used computers, and even the computer applications differed by location. *Id.* at 10. Defendant argues that most putative class members used different computer applications, and, unlike the named plaintiffs, "did not have to be 'ready' on their telephones to log-in their time." *Id.* Also, many putative class members worked at client locations, such that all of their equipment and applications differed. *Id.* Some putative class members had their time automatically recorded the moment they logged-in to their computers or telephones. *Id.* Furthermore, Defendant contends that "many sites prohibited Team Leaders from editing putative class members time records at all without approval from senior management or Human Resources." *Id.* Additionally, citing three declarations, Defendant claims that, "[c]ontrary to Plaintiffs' experiences, some sites prohibited pre-shift work of more than five or ten minutes." *Id.* at 11.[1]

Defendant's argument that the various timekeeping processes precludes Plaintiffs from being similarly situated is unavailing. First, Defendant decided to utilize different types of timekeeping processes at different locations. Plaintiffs were merely using the process implemented at their respective locations. Furthermore, the use of different timekeeping programs at different locations has no bearing on whether there was a policy or practice from the supervisors and Team Leads instructing the plaintiffs and putative class members to not record their time worked before the start of their shift.

Regardless, an evaluation of the evidence is more appropriate at the second stage on a

---

[1] By allowing five or ten minutes of pre-shift work, Defendant appears to concede that some pre-shift work was uncompensated, which suggests that the national policy to "accurately record all time worked and [compensate employees] for all time worked" was not followed. (*See* Def.'s Opp'n at 8.)

motion to decertify or once the case reaches the merits phase of the litigation. *Saleh*, 297 F. Supp. 3d at 1035 (citing *Wellens v. Daiichi Sankyo, Inc.*, No. 13-CV-00581-WHO, 2014 WL 2126877, at *5 (N.D. Cal. May 22, 2014)). It is at the second stage of the certification that the court may consider "whether the 'disparate factual and employment settings of the individual plaintiffs' means that this case cannot proceed collectively, or would need to be prosecuted with subclasses for each of the job titles or geographic locations…." *Wellens*, 2014 WL 2126877 at *5.

a. Whether *Anderson* collective action members are precluded from participation.

Defendant argues that Plaintiff Mcadory is not similarly situated, because his claims, as well as those of other putative class members, may have been released by settlement of another FLSA lawsuit, *Anderson v. The Minacs Group (USA) Inc., No. 2:16-cv-13942-NGE-SDD (E.D. Mich)*. (Def.'s Opp'n at 15.)

In their reply, Plaintiffs argue that, even if the prior lawsuit were relevant and Mcadory and others released their claims against Defendant, any release would only serve to limit their respective damages, which should be considered at stage two. (Pls.' Reply at 6-7.) Indeed, Mcadory remained in Defendant's employ after the end date of March 31, 2017, so, at worst, he could be still compensated for the period of April 1, 2017 to June 2018. *See* Unopposed Mot. for Approval of FLSA Collective Settlement, Decl. of Molly E. Nephew, "Nephew Decl.," Dkt. No. 46-1, Ex. 2 at 3.

Accordingly, the Court declines to find that Plaintiff Mcadory not similarly situated.

b. Collective Action Waivers

On December 28, 2018, Concentrix contends that it began entering into class and collective action waivers with its Representatives, as well as other positions. (Def.'s Opp'n at 15; Ording Decl. ¶ 9, Ex. D.) As a result, the Court would be required to make individual determinations of whether each putative class member waived their right to proceed in this action, and those determinations would predominate over the litigation. *Id.* Defendant is again putting the proverbial cart before the horse, as this is an issue that may be addressed at stage two.

//

c. Plaintiff LaPrincess June

Defendant argues that Plaintiff June is not similarly situated, because she was a work-at-home employee, and Plaintiffs have conceded that such employees are excluded from the putative class. (Def.'s Opp'n at 16.) Plaintiffs did not address Plaintiff June in their reply, but the complaint provides that Plaintiff June worked at the Greenville, SC call center from August 2017 to July 2018. (Compl. ¶ 14.) At the hearing, Plaintiffs acknowledged that Plaintiff June was an at-home employee, but was waiting for Defendant to confirm that she never worked at a call center. Plaintiffs conceded that if she exclusively worked at-home, that she would not be an appropriate representative of the proposed collective.

Accordingly, in the interim Plaintiff June may remain a named plaintiff, but the parties are ordered to determine whether she worked at a call center during relevant time period prior to the next case management conference.

**iii. Plaintiffs' proposed collective is too broad.**

Plaintiffs seek to certify the collective action as:

> All current and former Call Center Agent employees, or other job titles performing the same or similar job duties, who worked more than forty hours per week for Concentrix at any time in the last three years and were not paid overtime for every hour worked. "At Home" Call Center Agents are excluded from the Class.

(Pl.'s Mot. at 1.)

This proposed collective, however, is overbroad, as Plaintiffs have only provided evidence that CCAs, CSR, and others who performed similar job duties, worked off-the-clock before their scheduled shifts in preparation for that work shift. Accordingly, the Court conditionally certifies the more narrow collective[2] as:

> All current and former Call Center Agent employees, Customer Service Representative employees, or other job titles performing the same or similar job duties, who worked off-the-clock before their shift for Concentrix, in preparation for their shift, resulting in working more than forty hours per week at any time in the last three years, and were not paid overtime for the pre-shift time worked. "At Home" Call Center Agents are excluded from the Class.

[2] The Court notes that pre-shift work should be compensated regardless of whether that additional time is subject to an overtime premium.



United States District Court
Northern District of California

Thus, at this juncture, Plaintiffs' showing is sufficient at the notice stage to support conditional certification of the narrowed collective. Certification may be revisited at the second stage as to the proper scope of the FLSA class, and whether subclasses are appropriate.

**B. Proposed Notice**

Concentrix raises several objections to the Plaintiffs' proposed notice. (Def.'s Opp'n at 16.)

**i. Contact Information Requested**

Plaintiffs request that Defendant produce a list of all putative class members from each of its brick-and-mortar facilities. (Pl.'s Mot. at 15.) Specifically, Plaintiffs request each call center employee's full name, last known mailing address, and last known email address (work email address if a current employee of Concentrix, personal email address if a former employee of Concentrix). *Id.*

In opposition, Defendant argues that Plaintiffs' request for e-mail addresses is overbroad, duplicative, and unnecessarily intrusive to the privacy rights of Defendant's employees. (Def.'s Opp'n at 16.) Plaintiffs, however, argue that this type of contact information is commonly furnished in FLSA cases. (Pls.' Mot. at 16.) Plaintiffs reason that, in today's modern environment, email is a ubiquitous and typical means of communication, and the production of them have, in turn, become commonplace in FLSA cases throughout the country. *Id.*

"Courts routinely approve the production of email addresses and telephone numbers with other contact information to ensure that notice is effectuated…." *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 18594, at *61 (N.D. Cal. Feb. 13, 2014). Nevertheless, Defendant contends that names and addresses alone should suffice to meet the needs for notice and that emails should only be required where necessary to ensure delivery. (Def.'s Opp'n at 23.) (citing *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 276 (N.D. Cal. 2015)). The Court disagrees. Now, email are regularly utilized by the masses, and may, in fact, be more reliable than mailing addresses, particularly for former employees who may have moved residences. Indeed, Plaintiffs raise the potential challenge in reaching potential class members given the classes' transient nature, as reason to require email addresses to ensure delivery. (Pls.'

United States District Court
Northern District of California

Mot. at 19. Thus, Plaintiffs' request to receive employees' last known email address is granted.

Lastly, Plaintiffs request that Concentrix be ordered to produce the contact information within 14 days. (Pls.' Mot. at 15.) Defendant requests that the deadline be extended to thirty days after the Court's order approving the notice to the putative class members. (Def.'s Opp'n at 21.) There is no reason why the production of the contact information should be predicated on the approval of the notice. Rather, it makes more sense for Plaintiffs to have the contact information prior to the approval, so that the notice may be disseminated immediately after it is approved.

Accordingly, within 21 days of this order, Defendant shall produce each putative class member's full name, last known mailing address, and last known email address (work email address if a current employee of Concentrix, personal email address if a former employee of Concentrix). Additionally, the notice may be disseminated using both U.S. Mail and e-mail. (*See* Pls.' Mot. at 15)

**ii. Electronic Signature Service is Acceptable**

Plaintiffs request that putative class members be allowed to opt-in using electronic signatures. (Pls.' Mot. at 17.) Defendant opposes this request on the grounds that consent forms filed using electronic signatures may not be reliable or authentic. (Def.'s Opp'n at 19.) The Court disagrees. "Technology has advanced since the *Harris* action wherein the Court concluded that electronic signatures could raise authenticity issues." *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 U.S. Dist. LEXIS 32370, at *16-17 (N.D. Cal. Mar. 16, 2015). Moreover, Plaintiffs' proposed safeguards to verify that the identity of individuals signing his or her Consent to Sue form is the same without regard to whether the form is submitted by U.S. Mail or electronically. (Pls.' Reply at 14.) Plaintiffs' argue that counsel is not in a better position to authenticate a consent form received via U.S. Mail than one submitted via encrypted signature software sent only to the opt-in plaintiff. *Id.* Moreover, the Court notes that many important documents are routinely sent and signed electronically, such as financial documents, contracts, and even taxes.

Therefore, Plaintiffs' request that putative class members be permitted to file their consent forms using electronic signature is granted.

United States District Court
Northern District of California

**iii. A follow-up notice is permitted**

Plaintiffs request that a follow-up notice be sent half-way through the 90-day opt-in period. (Pls.' Mot. at 19.) Plaintiffs argue that allowing for a reminder is not novel in this district, and serves the remedial purpose of the FLSA, because it will ensure that interested class members who may have misplaced, forgotten about, or never received the original notice would be afforded an opportunity to opt-in. *Id.*

Defendant opposes the follow-up notice, because it contends that multiple solicitations to putative class members, who otherwise show no interest in joining the suit, is inappropriate and unduly suggestive that the court believes that Plaintiffs' claims have merit. (Def.'s Opp'n at 21.) The Court disagrees. As an initial matter, the request is for a second notice to be sent around day 45. Even if it is disseminated via U.S. Mail and e-mail, that accounts for a maximum of four notices total, all of which are easily discarded.[3] Second, any concern that a follow-up would unduly suggest that the Court find the case has merit is " uncompelling, given that the second notice will be disseminated by Plaintiff[s'] counsel, not the Court." *See Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 U.S. Dist. LEXIS 99924, at *18 (N.D. Cal. July 17, 2012). Furthermore, the disclaimer on the first page of the proposed notice makes it clear that the Court takes no position on the merits of the case. (Proposed Notice, Nephew Decl., Ex. 6.) Third, the fact that individuals need to opt-in to FLSA actions to be included renders a reminder notice appropriate. *See id.; see also Harris*, 716 F. Supp. 2d at 847 (N.D. Cal. 2010) (finding reminders appropriate because of the opt-in requirement).

Accordingly, Plaintiffs' request to send follow-up notices halfway through the 90-day notice period is granted.

**iv. Content of the Proposed Notice**

The Court is responsible for monitoring the preparation and distribution of the notice, to "ensure that it is timely, accurate, and informative." *Hoffmann-La Roche v. Sperling*, 493 U.S.

[3] The ability to send a reminder notice is even more important when using e-mail, since notices may be erroneously identified by e-mail clients as "junk" or "spam" and routed to folders unseen by putative class members. A reminder at least provides one more opportunity of being seen by the intended recipient.

165, 172, 110 S. Ct. 482, 487 (1989). Defendant contends that the proposed notice is improper, because the prospective class members are not properly apprised of their responsibilities in joining the lawsuit, the requested statement of legal effect is duplicative and unnecessary, and Defendant should be allowed to specifically deny Plaintiffs' claims in the notice. (Def.'s Opp'n at 16.)

a. Responsibilities of Opt-in Plaintiffs

Defendant contends that Plaintiffs fail to include all of the class members' potential risks and responsibilities that arise from opting-in to an FLSA collective action. (Def.'s Opp'n at 18.) Specifically, Defendant requests that the following language be included, "if you do not prevail on your claim, Concentrix's court costs and expenses may be assessed against you. You may also be obligated to testify at trial, testify at depositions, respond to discovery requests, and may be required to travel for the trial." *Id.* Plaintiffs, however, argue that the purpose for this language is to cause a chilling effect on the participation in the action. (Pls.' Reply at 12.)

Indeed, Plaintiffs' proposed notice contains most of the obligations proposed by Defendant, including that they may be required to respond under oath to written questions, to have their deposition taken, to produce documents, and/or testify in court at a trial or hearing in the United States Federal Courthouse in Oakland, California. (Proposed Notice at 2.) For that reason, the Court finds that any further inclusion of potential liability, such as speculative costs, would cause a chilling effect to potential class members, and is, therefore, unnecessary. *See McKeen-Chaplin v. Provident Sav. Bank*, No. 2:12-cv-03035-GEB-JFM, 2013 U.S. Dist. LEXIS 113654, at *21-22 (E.D. Cal. Aug. 9, 2013) (there, the court held that warning prospective plaintiffs that they may be responsible for Defendant's cost is not required by the FLSA). As a result, Defendant's proposed change is denied.

b. Requested Statement of Legal Effect

Defendant contends that part of Plaintiffs' requested statement of legal effect is duplicative and unnecessary. (Def.'s Opp'n at 19.) The section reads as follows:

> If you do not wish to be part of this lawsuit, you do not need to do anything. If you do not join the lawsuit, you will not be part of the case in any way and you will not be bound by or affected by the result (whether favorable or unfavorable). In other words, if you do not file a Consent to Sue form, you will not receive any unpaid minimum



United States District Court
Northern District of California

and/or overtime wages or other relief granted under this lawsuit if Plaintiffs prevail on their FLSA claims.

(Proposed Notice at 3.) Here, Defendant seeks to strike the second sentence that states "[i]n other words, if you do not file a Consent to Sue form, you will not receive any unpaid minimum and/or overtime wages or other relief granted under this lawsuit if Plaintiffs prevail on their FLSA claims." (Def.'s Opp'n at 19 (citing Proposed Notice at 3.)) While perhaps redundant, to an individual not familiar with FLSA cases or the law generally, it may aid in understanding the consequences of not opting-in to the collective action. Thus, the Court finds that the second sentence assists potential class members in making an informed decision by clarifying the preceding sentence. Accordingly, the request to strike the second sentence is denied.

c. <u>Whether Defendant is permitted to specifically deny allegations</u>

Plaintiffs' notice states that "Defendant denies Plaintiffs' allegations." (Proposed Notice at 2.) Defendant, however, requests that a more specific denial of the claims be added that states: "Concentrix contends that it requires all hourly call-center agents to accurately record all time worked and pays its call centers agents for all time worked." (Def.'s Opp'n at 19.) Defendant's proposed denial, however, mirrors its purported nationwide policy, and is meant to rebut the claim that putative class members performed off-the-clock work. (*See* Def.'s Opp'n at 7-8.) Consequently, Defendant's request for a more specific denial is denied.

d. <u>Meet and confer to finalize proposed notice</u>

In light of the foregoing, the parties are ordered to meet and confer regarding the form of the notice, which shall be consistent with this order. The parties are advised to carefully review the proposed notice to ensure that the narrowed putative class is properly identified, and that no typographical errors are in the final submission.[4] If they cannot stipulate to the form of notice, they may submit a joint letter of not more than five pages explaining their respective positions, and shall attach the redlined versions of their proposals, so that the undersigned can easily discern where their positions differ. The stipulation or joint letter shall be filed within 21 days of this order.

---

[4] The Court observed that the sentence on page 3, line 17 ends with "unless you," which appears to be in error.

### C. The Court declines to appoint Johnson Becker as interim collective action counsel

Finally, Plaintiffs request that the law firm of Johnson Becker be appointed interim class counsel pursuant to Rule 23(g)(1). (Pls.' Mot. at 20.) Johnson Becker is national plaintiffs' law firm, which has been appointed interim class counsel in dozens of FLSA actions. (*See* Johnson Becker, P.L.L.C Law Firm Resume, Nephew Decl., Ex. 7.) While Defendant does not object to this appointment, there are no other firms besides Johnson Becker seeking to be appointed as interim collective action counsel, and the consent to sue form explicitly provides that the individual opting-in to the litigation agrees to be represented by Johnson Becker. (*See* Consent to Sue, Nephew Decl., Ex. 6 at 6.) Accordingly, the Court finds it unnecessary to make a formal interim appointment and declines to do so.

## IV. CONCLUSION

In light of the foregoing, Plaintiffs' motion to conditionally certify the collective action is GRANTED IN PART AND DENIED IN PART. Defendant shall produce a contact list for the narrowed, putative collective within 21 days of this order.

Additionally, the parties are ordered to meet and confer regarding the proposed notice, which shall be consistent with this order. Within 21 days of this order, the parties shall either submit a stipulated, proposed notice or a joint letter consistent with this order.

IT IS SO ORDERED.

Dated: August 1, 2019

KANDIS A. WESTMORE
United States Magistrate Judge