UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQLYN KNIGHT, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CONCENTRIX SERVICES US, INC.,<br><br>    Defendant. | Case No. 18-cv-07101-KAW<br><br>**ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT**<br><br>Re: Dkt. No. 199 |

Plaintiffs Jacqlyn Knight and Aquanetta Wright brought this putative class and collective action against Defendant Concentrix Services US, Inc., alleging violations of the Fair Labor Standards Act ("FLSA") and various state wage and hour laws, as well as breach of contract and unjust enrichment. (First Amend. Compl. ("FAC"), Dkt. No. 151.) Pending before the Court is the parties' joint motion to approve an FLSA settlement on behalf of the representative Plaintiffs and 1,853 additional individuals who opted in to the collective action. (Mot. for Settlement Approval, Dkt. No. 199.)

Having considered the papers filed by the parties and the relevant legal authority, the Court GRANTS the motion to approve the settlement.

## I.   BACKGROUND

Plaintiffs are Defendant's current and/or former call center agents ("CCAs"), whose primary duties were to answer calls from vendors and consumers, and to provide customer service using Defendant's telephones, computers, and programs. (FAC ¶¶ 1, 23, 27, 48.) Plaintiffs allege that CCAs were regularly required to work off-the clock without compensation. (FAC ¶ 45.) Specifically, Defendants required CCAs to arrive at the call center before their scheduled shift to start up their computers, and then launch the necessary programs and applications required to

service Defendant's customers.  (FAC ¶ 49.)  Only after these processes were completed were Plaintiffs able to clock-in and start getting paid.  (FAC ¶ 49.)  For example, Plaintiff Knight was required to arrive prior to her scheduled shift start time to complete this start-up work, which included booting up at least seven different programs.  (Mot. for Settlement Approval at 3-4.)  Plaintiff Knight could not clock in until she was ready to take a call.  (*Id.* at 3.)  Defendants, in turn, deny that CCAs were required to work off-the-clock, and assert that any log in time was *de minimis*.  (*Id.* at 5-6.)

On November 21, 2018, Plaintiffs filed the instant action.  (Dkt. No. 1.)  On August 1, 2019, the Court conditionally certified a conditional class of:

> All current and former Call Center Agent employees, Customer Service Representative employees, or other job titles performing the same or similar job duties, who worked off-the-clock before their shift for Concentrix, in preparation for their shift, resulting in working more than forty hours per week at any time in the last three years, and were not paid overtime for the pre-shift time worked. "At Home" Call Center Agents are excluded from the Class.

(Dkt. No. 60 at 8.)  Following a 90-day notice period, over 1,800 individuals returned and filed their Consents to Sue.  (*See* Dkt. Nos. 66-105, 107, 109, 111, 113-15, 118-31, 133-35, 137-39.)  On March 16, 2020, Plaintiffs filed the operative complaint.

The parties then agreed to conduct discovery based on a representative sample of the collective, in which the representative Plaintiffs and a random sample of 15 opt-in members would respond to discovery requests.  (Mot. for Settlement Approval at 2; *see also* Dkt. No. 161 at 4-6.)  This included responding to interrogatories and requests for production.  (*Id.*)  Additionally, the parties gathered archived data encompassing multiple years of data, completed an on-site expert time study, and reviewed tenure and personnel data for the collective.  (Mot. for Settlement Approval at 2.)  Throughout discovery, the parties have exchanged thousands of pages of documents.  (*Id.* at 8.)

In July 2022, the parties reached a settlement in principal during a full-day mediation before mediator Michael Russell.  (Mot. for Settlement Approval at 8.)  On December 15, 2022, the parties filed a joint motion to approve a settlement.  On February 17, 2023, the Court requested supplemental briefing as to the scope of the release, noting that Courts in the district "routinely

2

1   reject FLSA settlements when the scope of the release goes beyond the overtime claims asserted in
2   the complaint." (Dkt. No. 200 at 1 (internal quotation omitted).) On March 3, 2023, the parties
3   revised the released claims language to be limited to "claims within the specific scope of the wage
4   and hour claims asserted in the Amended Complaint," and provided a revised settlement
5   agreement. (Dkt. No. 201.) On March 17, 2023, the Court requested further supplemental
6   briefing, noting that certain terms in the revised settlement agreement were different from the
7   originally submitted agreement, and requesting clarification as to which terms applied. (Dkt. No.
8   202.) On March 20, 2023, the parties explained that the parties had "inadvertently made their
9   revisions [to the scope of the release] upon an earlier draft of the Settlement Agreement that
10  contained slightly different terms than those submitted to the Court in the parties['] original
11  Memorandum of Law in Support of Joint Motion to Approve Settlement." (Dkt. No. 203.) The
12  parties also provided the operative Settlement Agreement. (Settlement Agreement, Dkt. No. 203-
13  1.)

14  Under the terms of the operative Settlement Agreement, Defendant will pay $1,550,000.
15  (Settlement Agreement ¶ 19, Dkt. No. 201-1.) Of this amount, Plaintiffs' counsel seeks an award
16  of $563,988.76. (Settlement Agreement ¶ 27.) The Settlement Agreement also includes an
17  Incentive Payment of $2,500 each to Plaintiffs Knight, Wright, and Evan Tomer, as well as $1,000
18  each for the four remaining representative Plaintiffs, in exchange for a general release of all
19  claims. (Settlement Agreement ¶ 23.) The Settlement Agreement selects KCC, LLC as the
20  Settlement Administrator, at a cost estimated not to exceed $25,207. (Settlement Agreement ¶
21  35.) This leaves a net amount of approximately $949,304.24.

22  The net amount will be distributed to the representative Plaintiffs and FLSA collective
23  ("Settlement Class Members"). (Mot. for Settlement Approval at 8.) Each Settlement Class
24  Member will be paid 5 minutes of overtime per day (25 minutes per week) as backpay, as well as
25  50% liquidated damages of 2.5 minutes per day (12.5 minutes per week) during the applicable
26  Calculation Period. (Settlement Agreement ¶ 24(a).) The Calculation Period, in turn, is three
27  years from the date on which each Settlement Class Member's consent to sue was filed.
28  (Settlement Agreement ¶ 24(a).) The minimum payment will be $50.00. (Settlement Agreement ¶

3

1  24(a).)  The payments will be split equally between unpaid wages and liquidated damages, with
2  Defendant paying its share of the employer withholdings from funds outside of the Settlement
3  Amount.  (Settlement Agreement ¶ 24(b); Mot. for Settlement Approval at 9.)  Payments that are
4  not cashed by the individual Settlement Class Member will revert to Defendant.  (Settlement
5  Agreement ¶ 25.)  In exchange for the payments, Settlement Class Members agree to release wage
6  and hour claims that specifically relate to those state and federal claims alleged in the operative
7  complaint.  (Settlement Agreement ¶ 45; Supp. Brief at 3, Dkt. No. 201.)

## II.  LEGAL STANDARD

"The [FLSA] seeks to prohibit 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11 (2011) (quoting 29 U.S.C. § 202(a)).)  Employees cannot waive their rights under the FLSA "because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation omitted).  "Thus, either the Secretary of Labor or a district court must approve the settlement for any FLSA claim."  *Gonzalez v. Fallanghina, LLC*, Case No. 16-cv-1832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017); *see also Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 WL 2688224, at *1 (N.D. Cal. June 22, 2017).

"The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval."  *Otey v. Crowdflower, Inc.*, Case No. 12-cv-5524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).  Courts in this district typically evaluate the settlement under the standard established by the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982).  *E.g.*, *id.*; *Gonzalez*, 2017 WL 1374582, at *2; *Slezak*, 2017 WL 2688224, at *2.  Thus, the courts consider whether the settlement agreement is "a fair and reasonable resolution of a bona fide dispute."  *Lynn's Food Stores, Inc.*, 679 F.2d at 1355.  If the settlement is a reasonable compromise over issues actually in dispute, the court may approve the settlement "to promote the policy of encouraging settlement in litigation."  *Id.* at 1354.

4

### III. DISCUSSION

#### A. FLSA Settlement

##### i. Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Gonzalez*, 2017 WL 1374582, at *2 (internal quotation and modification omitted). Here, the parties dispute whether Defendant's timekeeping system recorded all hours worked, whether the unpaid log in time was *de minimus*, and whether the case could have proceeded on a collective basis given that the Settlement Class Members worked at different facilities with different timekeeping systems and different log in procedures. (Mot. for Settlement Approval at 6-7.) Thus, the Court concludes that a bona fide disputes exists.

##### ii. Fair and Reasonable Resolution

To determine whether a settlement is fair and reasonable, the courts consider the "totality of the circumstances and the purposes of [the] FLSA." *Slezak*, 2017 WL 2688224, at *3 (internal quotation omitted). Courts have considered the following factors:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)).

###### a. Range of Possible Recovery

Plaintiffs estimate that the total damages based on 25 minutes of unpaid overtime per workweek, plus an additional 100% in liquidated damages, is $1,294,014.98. (Mot. for Settlement Approval at 16.) Here, the parties have settled for 25 minutes of unpaid overtime per week, plus an additional 50% in liquidated damages. (*Id.*)

Of note, in the operative complaint, Plaintiffs had alleged that the log in time could take 15 minutes per shift, or as much as 30 minutes or more if technical issues arose. (FAC ¶ 49.) Thus, a full verdict value may be significantly higher depending on the amount of time each individual

actually spent logging on. At the same time, Defendant had asserted that the vast majority of the Settlement Class Members were subject to a software restriction that prohibited them from logging into Defendant's systems and performing any work more than five minutes before the start of their scheduled shift, such that "the maximum amount of back pay they could have conceivably been entitled to was 5 minutes of pre-shift work." (Mot. for Settlement Approval at 17.) Thus, the amount of unpaid overtime worked by a Settlement Class Member could be significantly higher or lower than 25 minutes. Given, however, the software restrictions that allegedly affected the "vast majority" of the Settlement Class Members, and that the settlement includes both 25 minutes of unpaid overtime and 12.5 additional minutes in liquidated damages, the Court finds that the proposed settlement amount is reasonable. Thus, this factor weighs in favor of approval.

          b.   Stage of the Proceedings and Amount of Discovery Completed

Under this factor, the Court considers "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Slezak*, 2017 WL 2688224, at *4. "So long as the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotation omitted).

This case has been pending for four years. Following a contested motion for conditional certification, the parties engaged in significant discovery, including the exchange of thousands of pages of documents. (Mot. for Settlement Approval at 17.) Defendant produced bulk time records on over 200 individuals, as well as tenure and personnel data on 1,798 of the 1,855 Settlement Class Members. (*Id.*) Plaintiffs also conducted an expert time study. (*Id.* at 17-18.) The parties then participated in a full-day mediation session before an experienced collective action mediator. (*Id.* at 12.)

The Court concludes that the parties had sufficient information to make an informed decision about settlement, and that this factor therefore weighs in favor of approval.

          c.   Seriousness of Litigation Risks

"This factor favors approving a settlement where there is a significant risk that litigation

might result in a lesser recovery for the class or no recovery at all." *Slezak*, 2017 WL 2688224, at *4 (internal quotation and modification omitted). Here, Plaintiffs faced risks regarding whether CCAs actually worked off-the-clock without compensation, given Defendant's clear written policies and procedures requiring CCAs to record all time worked. (Mot. for Settlement Approval at 13.) Likewise, Defendant asserts that it used software that automatically captured and recorded the time CCAs first logged into Defendant's network, which was necessary to perform any work. (*Id.*) There was also a risk that the collective would be decertified due to the use of different timekeeping systems, as well as some CCAs working at client locations using client specific systems, software, and procedures. (*Id.*) Moreover, Defendants assert that many CCAs waived their right to litigate in a class or collective procedure by signing waivers at the beginning of their employment. (*Id.* at 15.)

The Court finds that there was a risk that further litigation would have led to lower recovery or the decertification of the collective, as well as the inability of many Settlement Class Members to recover anything through this litigation. This factor therefore favors approval.

        d. Scope of Release Provision and Communications about the Action

The parties have modified the scope of the release to be limited only to claims within the specific scope of the wage and hour claims asserted in the operative complaint. (*See* Dkt. No. 201 at 2; Settlement Agreement ¶ 12.) Thus, this factor favors approval of the settlement.

        e. Experience and Views of Counsel and Participating Plaintiffs

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak*, 2017 WL 2688224, at *5. Plaintiffs' counsel specializes in employment litigation and complex litigation, including FLSA collective actions. (Rusch Decl. ¶ 4, Dkt. No. 199-3.) Plaintiffs' counsel believes the settlement is an "exceptional result" because the settlement would require the payment of 25 minutes of overtime for every workweek, as well as an additional 50% in liquidated damages. (Mot. for Settlement Approval at 18.) This requires a number of favorable assumptions for the Settlement Class Members, including that every Settlement Class Member: (1) was eligible for overtime for every week they worked for

7

1  Defendant, (2) worked at least five days per week, (3) worked every week between their start and
2  end date, and (4) worked 25 minutes of unpaid overtime. (*Id.*) The Court finds this factor favors
3  approval.

### f. Possibility of Fraud or Collusion

The Court finds that there does not appear to be any signs of collusion. In *In re Bluetooth Headset Products Liability Litigation*, the Ninth Circuit explained that signs of collusion in a class action include:

> (1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded [citations]; (2) when the plaintiffs negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds . . . [citations]; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund [citations].

654 F.3d 935, 947 (9th Cir. 2011).

Here, none of these signs are present. While Plaintiffs' counsel is receiving 36% of the settlement amount in attorney's fees and costs, the settlement still provides sufficient funds to give the Settlement Class Members the equivalent of 25 minutes plus 50% liquidated damages. There is also no "clear sailing" provision.

While unclaimed funds will revert to Defendants rather than be added to the class fund, the parties point out that this is not a class action. Rather, if an individual Settlement Class Member opts out or fails to cash their settlement check, that members' claim is not released. Thus, to require Defendant to still pay their portion of the settlement funds without receiving the benefit of the settlement would be unfair. (*Id.* at 21.) Courts in this district have approved FLSA settlements where unused funds reverted back to the employer. *See Dixon v. Cushman & Wakefield Western, Inc.*, Case No. 18-cv-5813-JSC, 2021 WL 3861465, at *12 (N.D. Cal. Aug. 30, 2021) ("Courts routinely approve settlements which likewise treat class and collective claims differently because the due process concerns that attach to a class settlement do not attach to a collective action as members of the collective are not bound by the settlement unless they opt-in."). The Court concludes that this factor weighs in favor of approval.

Taken together, each of the factors favor approval of the Settlement Agreement.

### iii. Attorney's Fees

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b). Here, Plaintiffs' counsel seeks $563,988.76, which is approximately 36% of the total award. This percentage is substantially higher than the 25% benchmark for a reasonable fee award in a common fund case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

The Court, however, finds that a higher award is warranted in this case. First, the results were good, obtaining a significant amount of overtime for each Settlement Class Member, as well as an additional amount in liquidated damages. Second, the fee request is less than the lodestar, as it is approximately 90% of the attorney's fees and costs incurred through December 2022. (Rusch Decl. ¶ 26.) The Court has also reviewed Attorney Rusch's declaration, which states the hourly rates and hours spent on this litigation, and finds them to be reasonable. Finally, the Court finds that the attorney's fees amount does not appear to reduce the amounts due to each Settlement Class Member. Rather, the Settlement Agreement awards each Settlement Class Member their 25 minutes of overtime and 12.5 minutes of liquidated damages for every week that individual worked, rather than a percentage of that amount. Thus, this is not a case where decreasing the attorney's fees award would result in additional money to the collective. Accordingly, the Court approves of the attorney's fees provision.

### iv. Incentive Payment

Finally, the Settlement Agreement provides for Incentive Payments for the representative Plaintiffs, specifically $2,500 to representative Plaintiffs Knight, Wright, and Tomer, as well as $1,000 to the remaining representative Plaintiffs. (Settlement Agreement ¶ 23.)

"[A] district court may award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class." *Selk*, 159 F. Supp. 3d at 1181. In determining whether an incentive payment is warranted, "the court should consider . . . the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in

9

1  pursuing the litigation." *Id.* (internal quotation omitted).

2  Plaintiff's counsel explains that the representative Plaintiffs took an active role in the
3  litigation, including engaging in discussions and settlement negotiations and reviewing critical
4  documents in this case. (Rusch Decl. ¶¶ 28-29.) Additionally, the Court observes that the
5  representative Plaintiffs are signing a general release of their claims, which further justifies the
6  requested Incentive Payment. The Court finds that the requested Incentive Payments are
7  appropriate, and approves this provision.

### IV.   CONCLUSION

9  For the reasons stated above, the Court GRANTS the motion for settlement approval, as
10  modified by the parties. (*See* Dkt. No. 203-1.)

11  Within 60 days of the date of this order, Plaintiffs shall file either a stipulation of dismissal
12  of the entire case or a status report regarding the execution of the Settlement Agreement.

13  IT IS SO ORDERED.

14  Dated: April 5, 2023

KANDIS A. WESTMORE
United States Magistrate Judge